**ANTHONY GIOVAN, an Individual, Plaintiff**

**v.**

**ST. THOMAS DIVING CLUB, INC., HARBORSIDE CORP., and RICHARD R. DOUMENG a/k/a DICK DOUMENG, an Individual, Defendants**

Civ. No. 1996-123

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 13, 1997

176

JAMES DERR, ESQ., St. Thomas, U.S.V.I., *for Plaintiff*

SAMUEL H. HALL, JR., ESQ., (Birch, de Jongh, Hindels & Hall), St. Thomas, U.S.V.I., *for Defendants*

BARNARD, *Judge*

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the defendants' January 17, 1997, Motion to Compel, seeking the examination of Alkione Giovan (Alkione), the plaintiff's daughter, as to matters revealed in

her presence and thus, presumably not protected by the attorney-client privilege. The Court heard the arguments of counsel on Wednesday, February 5, 1997. The plaintiff was represented by his counsel James Derr, Esq. and the defendants were represented by their counsel Samuel H. Hall, Esq.

In said motion and oral argument, the defendants request that the Court enter an order determining that all matters of communication between the plaintiff and his former counsel Charles Herndon, Esq. and present counsel made in the presence of Ms. Giovan are not privileged and, therefore, subject to examination.

## I. Facts

The facts of this matter as presented reveal that the elderly plaintiff leased property in Frenchtown, St. Thomas, V.I. on a ninety-nine (99) year lease, due to expire in 2067; that a portion of the said leased premise has been subleased to the defendants until 2017; that Alkione resides on the leased premises; that in February 1996, the plaintiff retained Attorney Herndon to review the sublease agreement between him and the defendants; that some time after meetings with counsel, the plaintiff, in a letter directed to the defendants, detailed events of default by them; and that in May 1996, Attorney Herndon, via a letter, notified the defendants that the sublease was to be terminated effective June 1996.

This action was later commenced. The deposition of the plaintiff and Ms. Giovan was duly noticed. The plaintiff's deposition was taken on October 22, 1996 and Alkione's deposition commenced later the same day. At Alkione's deposition, defendants inquired into the contents of the discussions between the plaintiff and his former counsel at which Alkione was present. The plaintiff's present counsel, James Derr, Esq., objected to these questions arguing that said questions invaded the attorney-client privilege.

In argument before the Court, plaintiff notified the Court that Alkione provides a number of services for her father because of his advancing age; that she assists him in managing the leased property; that she assists him in developing some of the property; and that Alkione is one of the plaintiff's heirs and will have some responsibility with respect to the 99 year lease and the subleases. Moreover, the plaintiff represented that he and Alkione were

referred by Attorney Herndon to present counsel in regards to the potential litigation of the sublease dispute; that Ms. Giovan attended the first meeting and several other meetings between plaintiff and present counsel; that Ms. Giovan was able to provide information to counsel regarding the pending suit that the plaintiff could not recall; that she was also able to provide other information which was not readily available; that counsel used the joint information to provide legal advice to the plaintiff and Alkione regarding their rights under the lease and the sublease. Furthermore, Alkione was advised regarding her status as one of the plaintiff's heirs. Importantly, at the hearing, both parties informed the Court that the parties have previously met to resolve this matter and that Alkione was present and fully participated in the settlement discussions.

Based on the above, the defendants argue that any conversations made between the plaintiff and his former attorney, Charles B. Herndon, Esq., in the presence of Ms. Giovan effectuated a waiver of the attorney-client privilege and said conversations are subject to inquiry on oral examination of Ms. Giovan. On the other hand, plaintiffs argue that the attorney-client privilege was not vitiated because Alkione's presence at said meetings was necessary and in furtherance of the communication and the retention of legal advice, and furthermore, Alkione shared a common interest with the plaintiff in the resolution of this matter.

This Court must thus decide whether the attorney-client privilege was waived, as to the communications between the plaintiff and his former and present counsel, because the discussions occurred in the presence of a third party, namely, Alkione Giovan, the plaintiff's daughter. And lastly are there any exceptions to the third party disclosures which would preserve the privilege.

## II. Discussion

Courts have narrowly construed the attorney-client privilege finding that it obstructs the truth-finding process. *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991), *Advanced Technology Associates Inc., v. Herley Industries, Inc.*, 1996 U.S. Dist. Lexis 17931, 1996 WL 711018 (E.D. Pa. 1996). The traditional elements of the attorney-client privilege which

179

identifies communications that may be protected from disclosure in discovery are:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication is made (a) is a member of the bar of the court or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Advanced Technology Associates Inc.*, 1996 WL 711018

██ Said privilege exists only to the extent that the communications are necessary for obtaining informed legal advice, which might not otherwise have occurred. *Id*. The general rule provides that "conversations between a client and his attorney are not privileged where there is a nonessential third party present." *United States v. Jones*, 623 F. Supp. 110, 112 (E.D. Pa. 1983) (citations omitted), *Super Tire Engineering Co. v. Bandag Inc.*, 562 F. Supp. 439, 441 (E.D. Pa. 1983). But, the courts have also concluded that the presence of a third party does not necessarily vitiate the attorney-client privilege. *Id*.

Courts have, thus, crafted exceptions to the general rule when disclosure to a third party is necessary for the client to obtain informed legal advice. *Westinghouse Electric Corp. v. Republic of Phillipines*, 951 F.2d 1414, 1424 (3d Cir. 1991), *Advanced Technology Associates*, 1996 WL 711018. For example, courts have held that the disclosure in presence of the client's agent or a person with commonality of interest with the client will not vitiate the attorney-client privilege. *Westinghouse Electric Corp., In Re Grand Jury Investigation*, 918 F.2d 374 (3d Cir. 1990), *Interfaith Housing Delaware Inc. v. The Town of Georgetown*, 841 F. Supp. 1393, 1397 (D. Del. 1994).

*a. Agency*

██ In order for the conversations between plaintiff and counsel,

180

held in the presence of Alkione, to be classified as an exception within the agency exception to the general rule precluding retention of legal advice in the presence of third parties, Alkione's presence must have been necessary for the retention of legal advice. That is her presence must have been essential to and in furtherance of the communication and absent disclosure of the communication to her, the purpose of the attorney-client privilege would not have been fulfilled because the client could not or would not have obtained legal assistance. *Westinghouse Electric Corp. and Advanced Technology Associates, Inc.*

The plaintiff has painted a picture portraying Alkione as his right hand in his business affairs because of his advancing age and diminished capacity for recollection. Alkione provided assistance during conversations with counsel regarding the plaintiff's business affairs and attended the conferences between plaintiff and counsel. Counsel also represented that her communications were essential in determining the facts in order to properly advise the plaintiff.

Pursuant to her deposition, however, Alkione asserted that she was not involved in the decision to file the instant complaint, nor did she make the decision to seek legal advice, the plaintiff having made said decision on his own.[1] In the deposition and according to the testimony at the hearing, Alkione did, however, handle the plaintiff's day-to-day business affairs while he was out of the territory during one-half the year; assisted him with repairs to the apartments; made deposits; paid light bills; and took an active interest in the plaintiff's business.

Although, the plaintiff made the decision to seek legal advice on his own and Alkione did not participate in the selection of counsel, the Court finds that she provided substantial assistance to the plaintiff in his business affairs and in recounting events to counsel regarding said business dealings to enable counsel to provide adequate legal advice to the plaintiff.

██ This finding, however, is not enough to support a conclusion that Alkione was, in fact, the plaintiff's agent. An "agency

---

[1] Alkione Giovan's deposition of 10/22/96 pg. 17.

[relationship] cannot be assumed from the mere fact that one does act for another." *Clayton v. McCullough*, 448 Pa. Super. 126, 670 A.2d 710 (Pa. Super. 1996) appeal denied, 677 A.2d 838 (Pa. 1996). The agency relationship results from "the manifestation of consent of one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Turley v. Kotter*, 263 Pa. Super. 523, 398 A.2d 699, 702 (Pa. Super. 1979). It requires agreement for the creation of a fiduciary relationship with control by the beneficiary. *HH(US), Inc., v. Bozel Mineracao E. Ferroligas, S.A.*, 175 B.R. 188 (Bankr. W.D. Pa. 1994). The basic factors taken into consideration in determining the nature of the express agency relationship are: (1) a manifestation by the principal that the agent shall act for the principal; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal shall be in control of the undertaking. *Id.* at 194.

Alkione testified at the deposition that she did not receive a salary from the plaintiff. However, she did testify that she recently became the secretary or treasurer of a corporation formed by the plaintiff. The discussions with counsel did not concern said corporation, however.[2] Based on the testimony, the Court notes that no evidence was presented by the plaintiff indicating that there was a formal agreement, express or implied, between the plaintiff and Alkione appointing her as his agent.

■ This Court must also examine whether the conduct of the plaintiff led other persons to believe that Alkione was his agent. "Apparent agency [authority] arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of the actual agency relationship." *Atlantic Tel.* and *Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1439 (3d Cir. 1994) *cert denied*, 131 L. Ed. 2d 757, 115 S. Ct. 1838 (1995), *National Labor Relations Board v. L & J Equipment Co.*, 745 F.2d 224, 232 (3d Cir. 1984) *reh'g denied*, 750 F.2d 25 (3d Cir. 1984), *Bensalem Township v. Coregis Indemnity Co., et al.*, 1995 WL 290438, (E.D. Pa. 1995) aff'd, 77 F.3d

---

[2] Alkione Giovan's 11/22/96 deposition, pg. 27.

182

461 (3d Cir. 1996). Apparent authority is a way of creating an agency relationship which flows from the conduct of the principal. Bensalem Township. Even though a person may not be an actual agent, based on the manifestations of the principal, that person may be an agent by virtue of apparent authority.

The defendants argue against any findings of an agency relationship between the plaintiff and Alkione. Based on the testimony, Alkione operated the plaintiff's business while he was out of the territory. And according to the deposition, the plaintiff was out of town for usually one-half of any given year. Importantly, the defendants have asserted that Alkione was allowed and did participate in settlement discussions between the parties. This underscores the important role that she has played and continues to play in the handling of the plaintiff's business affairs. The Court, however, will not make such a finding on Alkione's agent status, at this time, as evidence of reliance, crucial to a finding of apparent agency, was also not presented. Though the plaintiff has intimated the existence of an agency relationship, the evidence establishing same was scarce. Moreover, the Court need not decide the instant motion on the agency grounds as it can be resolved on the common interest question, and the agency determination is a question better left to the sound discretion of a jury.

*b. Common Interest Doctrine*

■ Another exception to the general rule which voids the attorney client privilege upon disclosure to a third party is the common interest doctrine. The courts, though, have not described the scope of the doctrine with precision. Some courts have held that "the rule protects communications made when a non-party sharing the client's interests is present at a confidential communication between attorney and client, but that even where the non-party who is privy to the attorney-client communications has never been sued on the matter of common interest and faces no immediate liability, it can still be found to have a common interest with the party seeking to protect the communications." *In re State Commission of Investigation Subpoena Number* 5441, 226 N.J. Super. 461, 544 A.2d 893, 896 (N.J. Super. Ct. App. Div. 1988) *cert. denied,* 544 A.2d 893 (N.J. 1988), (*citing to United States v. Zolin,* 809 F.2d

1411 (9th Cir. 1987)). Other courts have held that : "a community interest exists where different persons or separate corporations have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not commercial." *Id.*, *Pittston Co., v. Allianz Insurance Co.*, 143 F.R.D. 66 (D. N.J. 1992). Still other courts have stated that "no waiver of the attorney-client privilege occurs by reason of disclosure of confidential communications to business associates to whom disclosure is reasonably necessary." *Id.* Lastly, other courts have held that "parties with shared interests in actual or potential litigation against a common adversary may share privileged information without waiving their right to assert the privilege." *Thompson v. Glenmede Trust Co.*, 1995 WL 75243 (E.D. Pa. 1995).

Upon consideration of the testimony, the Court notes that Alkione has and continues to handle some of the plaintiff's business affairs; she has participated in the settlement discussions, therefore, she is interested in the outcome and settlement of the instant litigation; she has provided information to counsel regarding the plaintiff's business affairs; and she is one of the heirs and, as such, is interested in the effect of the master lease and subleases on the heirs' interest. Alkione was, thus, taking an ordinary and expected advisory role in her father's business and subsequent legal affairs. *See e.g. Schreiber v. Kellogg*, 1992 WL 309632 (E.D. Pa. 1992).

The Court also notes that the defendants have threatened potential litigation against Alkione arising out of her relationship with her father and the subleases, more particularly, the discussions regarding whether she wanted to terminate the sublease for her own benefits. Thus, within this same context, the Thompson court has held that pursuant to "the common interest rule . . . the disclosure of any materials to family members, where such information was provided to determine if they wanted to join other family members in [the] pending lawsuit against the same set of defendants and based upon the same issues to be litigated, did not waive the attorney-client privilege."

■ Importantly, the defendants by their action cannot now be heard to complain that Alkione does not share a common interest with the plaintiff in the resolution of this matter. The Court, thus, concludes that the plaintiff and Alkione have a sufficient community of interest to permit the plaintiff to disclose and discuss the pending suit with counsel in the presence of Alkione without vitiating the attorney-client privilege.

### III. Conclusion

Based on the facts and testimony as presented before the Court, the plaintiff has demonstrated that Alkione Giovan shares a common interest in the instant litigation with the plaintiff, that she has acted as an advisor in the plaintiff's business and legal affairs. Thus, her presence and participation at the meetings between the plaintiff and his counsel do not defeat the attorney-client privilege. And while she may be examined with respect to facts within her knowledge, the substance of her communications with her counsel and her father's communications with counsel in her presence will be protected. Accordingly, it is hereby

ORDERED that the defendants' January 17, 1997, Motion to Compel is DENIED.

DATED: JUNE 13, 1997